## MILLER *v.* WATSON & COMPANY.

In a suit pending in the superior court for injunction and damages, a restraining order was granted, and the defendant was allowed by the order to dissolve it by executing and filing in the court a bond for the eventual-condemnation-money. In pursuance of the order a bond was executed and filed. Several years afterwards the plaintiff recovered and entered judgment against the defendant and his sureties. When it was attempted to enforce the judgment against one of the sureties, by levy of the execution on his property, he resisted it by filing an affidavit of illegality, the ground of which was his alleged discharge as a surety by the plaintiff for a valuable consideration at a day subsequent to the filing of the bond, but antecedent to the judgment. On the trial the judge dismissed the affidavit of illegality, on demurrer, on the ground that it sought to go behind the judgment. *Held*, that there was no error in the ruling of the court.

NOVEMBER 19, 1910.

Illegality.     Before Judge Mitchell.     Thomas superior court. October 20, 1909.

In a suit pending in the superior court for injunction and damages, in October, 1901, a restraining order was granted, which also provided that it might be dissolved by the defendant giving a bond for the eventual condemnation-money. On the same day the de-

fendant as principal, with two others as security, executed and filed a bond and dissolved the restraining order. In 1907, the plaintiff recovered in the equity suit and entered judgment against the defendant and the sureties on his bond. Execution issued and was levied on the property of one of the sureties, to the enforcement of which the surety interposed an affidavit of illegality; setting up, among other things, that in 1902, which was after the execution of the bond and before the judgment was entered against him, the surety entered into a contract with the plaintiff, by the terms of which it was agreed that he should negotiate a sale of certain land for the plaintiff, and as compensation for his services in negotiating a sale the plaintiff would release and fully discharge him from any and all liability as surety on the bond; that, relying upon this contract, the surety performed the services, and through his efforts the plaintiff, on the 28th day of April, 1902, did sell the land at the price charged by him, and the surety thenceforward considered himself released from all liability and obligation on the bond, and not until the issuing and levying of the execution did the surety know that the plaintiff was undertaking to hold him responsible on the bond; that the surety had fully discharged his obligation as such surety, and the services rendered by him, as above set out, were accepted by the plaintiff as full and adequate compensation for the surety's liability upon the bond. The affidavit of illegality was returned by the levying officer, together with the execution, and the case entered upon the docket in accordance with the statute. When the case was called for trial the court sustained an oral motion, by counsel for the plaintiff in execution, to dismiss the affidavit, on the ground that the illegality was a mere effort to go behind the judgment. The defendant excepted.

*Fondren Mitchell,* for plaintiff in error. *Roscoe Luke,* contra.

ATKINSON, J. Prior to the adoption of the act approved December 20, 1893 (Acts 1893, p. 131, Civil Code, § 2978), in order to obtain judgment against sureties on bonds of losing parties in equitable proceedings, conditioned to pay the eventual condemnation-money, it was necessary to bring suit on the bond; but by the terms of the act mentioned it was made lawful to sign up judgment against the principal and sureties at the same time, as in cases of appeal, and it was not necessary, as theretofore, to bring suit upon the bond. The law providing for entering judgments

against sureties in cases of appeal is set forth in the Civil Code, § 5342, where it is declared: "In all cases of appeal, where security has been given, the plaintiff, or his attorney, may enter up judgment against the principal and surety, jointly and severally, and execution shall issue accordingly, and proceed against either or both, at the option of the plaintiff, until his debt is satisfied." It thus appears that in the case now before us there was statutory authority to render judgment against the surety on the bond of the defendant in the equity suit which was filed for the purpose of dissolving the restraining order. The purpose of the act of 1893 was to make the judgment so entered against the surety binding to the same extent as a judgment against him if rendered in a separate suit on the bond; in other words, that such a judgment should be a substitute for a judgment which might theretofore have been rendered in a separate suit on the bond. The surety might not have been a party to the equity suit for all purposes, but the law declared the relation of a surety on such bond to the suit in which it might be given; and when the surety entered into the contract of suretyship, as expressed in the bond, the law became a part of the contract, and by filing the bond in the pending suit he voluntarily sufficiently made himself a party to authorize a judgment to be entered against him. He was on notice that judgment was liable to go against his principal, and that in that event it would also go against him as a matter of course, unless something should occur sufficient in law to operate as his discharge as a surety. If subsequently to the filing of the bond the plaintiff made a separate contract, on a valuable consideration, to release him as a surety, it was in the power of the surety to move the court in which the bond was filed for his discharge as a surety. The court had jurisdiction of the parties and subject-matter, and power to mold its judgments and decrees in such manner as would afford complete relief to all the parties (Civil Code, §§ 3925, 5333), and, upon his motion to discharge, could have protected him either by separate order or upon final decree in the equity case. By becoming a party to the bond he voluntarily came into the equity suit at least to that extent, and had ample opportunity to be heard relative to his right to a discharge as surety, and was not deprived of due process of law. If he failed in that suit to insist upon his discharge as surety, it was his own fault. If he suffered judgment to go against him,

ordinarily it would be binding. If it was obtained by fraud or the like, his remedy would be by direct motion to set it aside, as in *Hall* v. *Lockerman,* 127 *Ga.* 537 (56 S. E. 759), and would not be by affidavit of illegality. *Tumlin* v. *O'Brien,* 68 *Ga.* 65; *Southern R. Co.* v. *Daniels,* 103 *Ga.* 541 (29 S. E. 761). The conclusiveness of a judgment similar in character was under consideration in the case of Jones *v.* Coker, 53 Miss. 195, where, after execution of an appeal bond, the sureties were discharged in bankruptcy, and, failing to move for a discharge, judgment was afterwards entered against them as a matter of course under the statute. In delivering the opinion Campbell, J., among other things said: "If it be true, as a legal proposition, that the complainants could not interpose the defense of bankruptcy, and claim its protection as a shield against the judgment being rendered against them, because of the legal impossibility of doing so, a chancery court could relieve them, if their discharge in bankruptcy discharged them from liability on the appeal bond. But it is not true that the complainants could not interpose their discharge in bankruptcy as an objection to judgment being rendered against them as well as their principal in the bond. By executing the appeal bond they became parties to the suit, at least so far as to entitle them to be heard for their own protection. It was their right to object to the rendition of a judgment against them on the bond, because of their discharge from it by matter ex post facto. They should have been present at the trial, actually, in person, or by attorney, as they were constructively, to object to the judgment against them and to show why it should not be rendered. It is true that judgment against all the obligors in the appeal bond followed a recovery by the plaintiff against the principal, who appealed, according to the provisions of the statute, but that was because there was no sufficient legal objection interposed. If the sureties had a release or discharge from the bond which had inured to them after the execution of the bond and before judgment on it, they had the right, and it was their duty, if they desired to avail of it to prevent judgment on the bond against them, to have set up this defense in the circuit court before judgment, when an issue of law or fact would have been made up and tried. Not having availed themselves of their right to object to judgment against them on the bond, they can not be heard in chancery to complain of the judgment. Thomas *v.* Phillips, 4 S.

& M. [Miss.] 358. Every one against whom a judgment is proposed to be rendered has the right to be heard in opposition to it. If the case be such that a judgment against all the obligors in a bond is declared by law to follow a verdict or judgment against the principal, the bond is the instrument subjecting sureties to liability to such judgment, and any thing which discharges from the bond, and is availed of by being set up as a defense, bars a judgment against him who has been so discharged." We approve the reasoning embodied in this excerpt, and our conclusion is that in the case before us the judge did not err in dismissing the affidavit of illegality.    *Judgment affirmed.    All the Justices concur.*